UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:08-CV-502-TBR

UNICARE LIFE & HEALTH INSURANCE COMPANY                    PLAINTIFF

v.

MARCIA HEDINGER,
LaVAUGHN W. DOWELL, Administratrix of the
Estate of Perry W. Dowell, GABRIAL V. HAYNES,
MICHAEL PERRY DOWELL, and
JORDAN W. DOWELL                                          DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Defendant Marcia Hedinger's Motion for Summary Judgment and Default Judgment (Docket #19). Defendant Michael Perry Dowell has filed a letter with the Court (Docket #12). Defendant LaVaughn W. Dowell has responded (Docket #22). Defendant Marcia Hedinger has replied (Docket #24). Defendant Gabrial V. Haynes has not entered an appearance in the case and Defendant Jordan W. Dowell has failed to respond. This matter is ripe for adjudication. For the following reasons, Defendant Marcia Hedinger's Motion for Summary Judgment and Default Judgment is GRANTED.

## BACKGROUND

Perry Dowell ("Dowell") died on December 31, 2007. As an employee of Ford Motor Company, Dowell was a member of a group life insurance benefit plan issued by Plaintiff Unicare Life & Health Insurance Company ("Unicare"). Under the terms of the plan, Unicare agreed to pay the sum of $60,500.00 to Dowell's named beneficiary upon his death. The plan defines "beneficiary" as "the person or persons to whom the death benefit will be provided." Dowell's beneficiary form designates his wife, Marcia Dowell, as his primary beneficiary.

Marcia Dowell is now Marcia Hedinger ("Hedinger"), and Dowell's ex-wife. On August

28, 2003, Dowell and Hedinger entered into a Settlement Contract and Divorce Decree, filed in Hardin Circuit Court, in the state of Kentucky. On May 23, 2006, the same court issued a qualified domestic relations order pertaining to Dowell's benefit plans. Dowell is survived by his three children, Michael Dowell, Gabrial Haynes, and Jordan Dowell. LaVaughn Dowell ("LaVaughn") serves as the administratrix of Dowell's estate.

Unicare filed the present interpleader action pursuant to 28 U.S.C. § 1335 to determine the rights to the proceeds of Dowell's life insurance policy. On May 12, 2009, the Court granted Unicare's motion for leave to deposit the insurance proceeds with the Court. Unicare was then dismissed from the action. Hedinger now moves for summary judgment.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

**I.      Summary Judgment**

First, Hedinger argues that the Employee Retirement Income Securities Act ("ERISA") is controlling in this case.  ERISA is a comprehensive statute enacted to "protect . . . the interests of participants in employee benefit plans and their beneficiaries."  29 U.S.C. § 1001(b).  ERISA governs employer established or maintained "employee welfare benefit plans" that, among other things, provide benefits in the event of sickness, accident, disability, or death through the purchase of insurance.  29 U.S.C. § 1002(1).  Because Dowell's group life insurance policy is employer-provided, Hedinger argues that it is an employee welfare benefit plan governed by ERISA.

LaVaughn does not dispute that Dowell's group life insurance plan is employer-provided, and therefore generally qualifies as an employee welfare benefit plan governed by ERISA.  However, LaVaughn argues that ERISA does not apply in this case because the qualified domestic relations order ("QDRO") entered into between Dowell and Hedinger on May 23, 2006, controls instead.

Generally, ERISA preempts state laws relating to employee benefit plans.  29 U.S.C. § 1144(a).  However, ERISA "shall not apply to qualified domestic relations orders . . . ." *Id.* at §

1144(b)(7). A qualified domestic relations order "is a type of domestic relations order which creates or recognizes an alternate payee's right to, or assigns to an alternate payee, the right to, a portion of the benefits payable with respect to a participant under a plan." *Boggs v. Boggs*, 520 U.S. 833, 846 (1997) (citing 29 U.S.C. § 1056(d)(3)(B)(i)).

LaVaughn submitted with her response a copy of the QDRO entered into between Dowell and Hedinger on May 23, 2006, in Hardin Circuit Court. The QDRO identifies Dowell as "Participant" and Hedinger as "Alternate Payee." The QDRO states that "[t]he Alternate Payee is entitled to fifty (50%) percent of the Participant's benefit accrued as of August 29, 2003." The QDRO further states that "[t]he Alternate Payee is entitled to fifty (50%) of any and all pre-retirement surviving spouse benefits."

In her reply, Hedinger argues that the QDRO addresses the disbursement of Dowell's Ford-UAW Retirement Plan and has no impact on the disbursement of the proceeds of his group life insurance policy. The QDRO expressly states that it governs the award of the "Alternate Payee's interests in the Plan," wherein "Plan shall mean Ford-UAW Retirement Plan." Having reviewed the QDRO, the Court agrees with Hedinger that it has no impact on Dowell's group life insurance policy. By its own terms, the QDRO pertains only to the disbursement of Dowell's Ford-UAW Retirement Plan. Therefore, the Court finds that the QDRO does not frustrate the application of ERISA to Dowell's group life insurance policy.

Next, Hedinger addresses the affirmative defense that the group life insurance policy is an "accumulated retirement benefit" to be distributed under the terms of paragraph 13 of the Settlement Contract and Divorce Decree entered into between Dowell and Hedinger on August 28, 2003. LaVaughn initially raised this affirmative defense in her Answer, but declined to

address it directly in her response to Hedinger's motion for summary judgment.

Paragraph 13 of the Settlement Contract and Divorce Decree states that Hedinger "shall be entitled to fifty (50%) percent of all [Dowell's] accumulated retirement benefits which he is entitled to through Ford Motor Company." In her response brief, LaVaughn argues that the aforementioned QDRO was meant to address the disbursement of Dowell's accumulated retirement benefits under the Settlement Contract and Divorce Decree. However, the QDRO itself makes no reference to the distribution of "accumulated retirement benefits," nor to paragraph 13 of the Settlement Contract and Divorce Decree. Thus, it is unclear whether the QDRO was issued in reference to paragraph 13 of the Settlement Contract and Divorce Decree.

Ultimately, it makes no difference whether the QDRO was issued in reference to paragraph 13 of the Settlement Contract and Divorce Decree because the Court has already determined that the QDRO has no impact on Dowell's group life insurance policy, and likewise finds that paragraph 13 of the Settlement Contract and Divorce Decree does not impact the policy. The Settlement Contract and Divorce Decree was generated in Hardin Circuit Court and is governed by state law. Thus, it is preempted by ERISA unless it is determined to be a QDRO exempt from federal preemption. *See Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 129 S.Ct. 865, 876 (2009). To qualify as a QDRO, a divorce decree must meet certain statutory criteria. *Id.* at 876 n.12. One such statutory requirement is that the divorce decree "clearly specif[y]" each plan to which the order applies. 29 U.S.C. § 1056(d)(3)(C)(iv).[1] Paragraph 13 of the Settlement Contract and Divorce Decree states that Hedinger "shall be entitled to fifty (50%)

---

[1] Section 1056(d)(3)(C) states: "A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies– (iv) each plan to which such order applies."

percent of all [Dowell's] accumulated retirement benefits which he is entitled to through Ford Motor Company." Nowhere in the divorce decree is the term "accumulated retirement benefits" defined. Thus, it does not clearly specify to which of Dowell's benefit plans it applies. Because the Settlement Contract and Divorce Decree fails to clearly specify to which benefit plans it applies, the Court finds that it does not qualify as a QDRO, and therefore is preempted by ERISA.[2] Having found that ERISA controls the disbursement of Dowell's group life insurance policy, the Court now turns to the question of who is the proper beneficiary under the policy.

One of the functions of ERISA is to provide the rules for determining who is a proper beneficiary under an employee welfare benefit plan. *Hendon v. E.I. Dupont De Nemours & Co.*, 145 F.3d 1331, 1998 WL 199824, at *4 (6th Cir. Apr. 13, 1998) (citing *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990); *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 420 (6th Cir. 1997); *Metro. Life Ins. Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir. 1996)). Under § 1104(a) of ERISA, a plan administrator must discharge his or her duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The Sixth Circuit interprets this section of ERISA "as establishing a clear mandate that plan administrators follow plan documents in determining the designated beneficiary." *Hendon*, 1998 WL 199824, at *4. The Supreme Court recently affirmed the Sixth Circuit's interpretation of § 1104(a) in *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, holding that a plan administrator should properly distribute benefits in accordance with plan documents. 129 S.Ct. at 876-78.

---

[2] The Settlement Contract and Divorce Decree fails to meet several of the statutory criteria necessary to qualify as a QDRO. For example, it fails to provide the last known mailing address of the participant and alternate payee, 29 U.S.C. § 1056(d)(3)(C)(i), and fails to provide the number of payments or period to which such order applies, 29 U.S.C. § 1056(d)(3)(C)(iii).

In his letter to the Court, Michael Dowell writes that his father intended that his children, not Hedinger, be the sole beneficiaries under the policy, and that any policy designation to the contrary is a mistake. Nonetheless, the plan documents, not the plan participant's intent, are controlling. *Kennedy*, 129 S.Ct. at 875. " . . . ERISA forecloses any justification for enquires into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: 'simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less certain rules.'" *Id.* at 875-76 (quoting *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting)); *accord Unicare Life & Health Ins. Co. v. Craig*, 157 Fed. App'x 787, 2005 WL 2323160, at *4 (6th Cir. 2005).

Hedinger is designated as the primary beneficiary under the policy. Dowell could have changed his beneficiary at any time after his divorce. However, for whatever reason, he declined to do so. Therefore, the Court finds that the plan administrator should distribute the group life insurance benefits in accordance with the beneficiary form, meaning that Hedinger is entitled to the group life insurance benefits.

LaVaughn raises for the first time in her response brief the issue of who should receive the benefits due under Dowell's Tax-Efficient Savings Plan for Hourly Employees ("TESPHE") plan. As Hedinger correctly points out in her reply brief, the disposition of Dowell's TESPHE benefits is not an issue currently before the Court. For this reason, the Court declines to consider the issue at this time.

**II.     Default Judgment**

Hedinger moves for default judgment against Gabrial V. Haynes . Hedinger has filed an

7

affidavit with the Court stating that Haynes was timely served, more than twenty days have elapsed from the date of service, and Haynes has failed to respond, appear, or otherwise defend the present action.

Under Rule 55(a), "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Hedinger has provided an affidavit demonstrating that Haynes has failed to appear or otherwise defend the present action. Thus, Hedinger is entitled to an entry of default against Haynes. Pursuant to its authority under Rule 55(b)(2), the Court also finds that Hedinger is entitled to a default judgment against Haynes. Fed. R. Civ. P. 55(b)(2).

## CONCLUSION

For the foregoing reasons, Defendant Marcia Hedinger's Motion for Summary Judgment and Default Judgment is GRANTED.

An appropriate order shall issue.